UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

AARON CARTER,
                                        Defendant.

18 Cr. 390 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has received an application from defendant Aaron Carter seeking

compassionate release from FCI Fort Dix, pursuant to 18 U.S.C. § 3582(c), in light of the risk

that the COVID-19 pandemic presents for inmates.

Carter was involved with a large-scale drug trafficking scheme between 2015 and 2018,

distributing heroin, mixed with fentanyl, to lower-level suppliers. *See* Dkt. 345 ("Sentencing Tr.").

On December 20, 2018, Carter pled guilty to one count of conspiracy to distribute heroin and

fentanyl in violation of 21 U.S.C. § 841(b)(1)(B). *See* Dkt. 456 ("Gov't Opp'n") at 3. On March

29, 2019, the Court sentenced Carter to 84 months' imprisonment, below the advisory

Guidelines range of 108–135 months. *See* Sentencing Tr. at 9, 56. Carter has been incarcerated

since June 5, 2018—or, approximately 24 months. *See* Dkt. 453 at 2 ("Def. Mem."). His current

estimated release date is May 22, 2023. *Id.*

On March 31, 2020, Carter submitted a request to the Bureau of Prisons ("BOP"),

seeking his compassionate release. Dkt. 449 at 7–9; Gov't Opp'n at 5. On April 27, 2020, BOP

issued a letter asking that Carter resubmit his request with greater specificity. Gov't Opp'n at 5;

Def. Mem. at 2. On June 2, 2020, Carter filed the present motion, seeking his immediate release

from custody on grounds relating to the COVID-19 pandemic.  Def. Mem. at 2–3.  Carter argues that he suffers from medical conditions that heighten his vulnerability to COVID-19 and that he has displayed a commitment to rehabilitation during his time in prison.  *Id.* at 5, 10–11.

On June 8, 2020, the Government filed a letter in opposition.  Gov't Opp'n.  The Government argues that Carter has not properly exhausted his administrative remedies, that he has yet to serve the majority of his sentence, that his offense was serious, and that his health conditions are not so severe as to warrant a reduction in his sentence.  *See generally id.*  On June 9, 2020, Carter replied.  Dkt. 459 ("Def. Reply").  Later that same day, the Government filed a reply, Dkt. 460, and Carter filed a response to the Government's reply, Dkt. 461.

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable."  *Id.* § 3582(c)(1)(A).

Here, the Government argues at the threshold that Carter's motion should be denied because he has failed to exhaust his administrative remedies.  Gov't Opp'n at 5–14.  The Government acknowledges that Carter made a request to the warden at FCI Fort Dix, which was denied with opportunity to resubmit, but argues that Carter sought release to care for his diabetic mother, and did not seek relief on account of the threat to Carter's health posed by COVID-19.  Gov't Opp'n at 1, 13.  Thus, the Government argues, to the extent Carter now relies on his own

2

medical conditions in light of the pandemic, Carter has not commenced, let alone exhausted, the administrative review process, as the BOP never received information relating to COVID-19. *Id.* Carter, in turn, argues that due to the urgent nature of his request and the extraordinary burden posed by COVID-19, this Court should waive the exhaustion requirement. Def. Mem. at 6–7. Alternatively, Carter argues that because the warden received the request more than 30 days ago, the Court should find § 3582(c)(1)(A) satisfied, notwithstanding that Carter's request was not based on COVID-19. Def. Reply at 1–2.[1]

While the Court is skeptical of Carter's suggestion that the administrative exhaustion requirement can or should be cast aside where the inmate sought administrative relief on separate grounds from those now at suit, the Court ultimately need not decide whether Carter properly exhausted his administrative remedies. That is because the Court concludes, on the merits, that a reduction of Carter's sentence is not supported by the "factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Ebbers*, 432 F. Supp. 3d 421, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (quoting 28 U.S.C. § 994(t)). Relevant here, the Commission's policy statement and its corresponding commentary on § 3582(a)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling

---

[1] The Government further contends that Carter's initial request was filed under 18 U.S.C. § 3624(c)(2), which provides for home confinement as opposed to compassionate release under § 3582(c). *See* Dkt. 460. According to the Government, if the initial motion was not under § 3582(c), then Carter has not exhausted his administrative remedies. *Id.* Carter counters that he has actually filed two requests with the BOP, and that his first request, made on March 31, did, in fact, seek compassionate release. *See* Dkt. 461, Ex. A. Because the Court denies Carter's motion on the merits, it need not reach a determination on this issue.

3

reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[2] U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A).  The defendant must also not be a danger to the community and the reduction must be consistent with the Commission's policy statement.  *Id.* § 1B1.13(2)–(3).

Carter argues that the first of these factors favors his early release.  The COVID-19 pandemic is indeed extraordinary and unprecedented in modern times in this nation.  It presents a clear and present danger to free society for reasons that need no elaboration.  And the crowded nature of jails and prisons presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.[3]  Recognizing that the realities of life as an inmate present added challenges for a heightened-risk inmate who contracts the virus to care for himself, in the past few months numerous courts, including this one, have ordered the temporary release of inmates held in

---

[2] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts.  *Ebbers*, 2020 WL 91399, at *1, 4.

[3] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (Mar. 30, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (citing *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences.[4]

The Government disputes that Carter is at significantly heightened risk—*i.e.*, whether he is materially more vulnerable to the effects of COVID-19 than an average (non-high-risk) inmate at FCI Fort Dix.[5]  However, even assuming, *arguendo*, that Carter's medical conditions put him at somewhat higher risk than the average inmate, a reduction in his sentence is not supported under § 3582(c)(1)(A).  Granting Carter's early release here would yield an overall sentence highly inconsistent with the § 3553(a) factors—in particular, "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense, . . . [and] to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a).  For the reasons explained in detail at Carter's sentencing, *see* Sentencing Tr. at 37–56, which the Court incorporates by reference here, Carter's "significant role" in a "very large-scale conspiracy to sell heroin laced with fentanyl" required a lengthy sentence then,

---

[4] *See, e.g., United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 (S.D.N.Y. April 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a 4-month sentence); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), Dkt. 451 (S.D.N.Y. April 2, 2020) (ordering compassionate release of defendant with asthma who had served 17 months of a 24-month sentence and was scheduled for release in four months); *United States v. McKenzie*, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *2–3 (S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Perez*, No. 19 Cr. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application, pursuant to § 3142(i), of 65-year-old defendant with COPD, in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19").

[5] Carter alleges that he has several medical conditions, including prediabetes, obesity, and possible liver damage.  Def. Mem. at 5; Def. Reply at 3–4.  The Government responds that no infected inmates are housed in Carter's unit, Carter has not proven any liver damage, and, as a 42-year old, Carter is not in a high-risk age category.  Gov't Opp'n at 1–2, 22–24.

*id.* at 39, and still does so now.  As the Court explained, "[h]eroin dealing, including heroin laced with fentanyl, is an epidemic in this city and this country," *id.* at 40, and Carter was "a meaningful contributor" to that epidemic, *id.*  The later onset of a global pandemic does not change that finding and cannot justify a reduction of Carter's sentence by well more than half.[6]

Carter's case stands in sharp contrast to those in which the Court has ordered the release of heightened-risk inmates.  In a number of cases, where an inmate seeking release had served most of his or her term of incarceration, this Court has found that a fresh assessment of the § 3553(a) factors justified early release.[7]  Carter, however, is not yet at the midway point of his sentence, or close.  In these circumstances, his immediate release would be entirely inconsistent with the § 3553(a) factors.[8]

---

[6] The Court does, however, note the productive steps Carter has taken in prison, including his participation in the RDAP drug abuse program and his enrollment in a GED course.  *See* Def. Mem. at 5.  These efforts, along with Carter's apparently clean disciplinary record, are encouraging and suggest an authentic commitment to productively reintegrating into society upon his release.  *See* Def. Mem. at 14.  They do not, however, justify Carter's immediate release.

[7] *See, e.g.*, *United States v. Jasper*, Dkt. 18 Cr. 390 (PAE), Dkt. 441 (S.D.N.Y. April 6, 2020) (defendant had served all but 34 days of a 4-month sentence and had an immune-inflammatory disease); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), Dkt. 451 (S.D.N.Y. April 2, 2020) (defendant was scheduled for release in four months and had asthma); *United States v. Knox*, 15 Cr. 445 (PAE), Dkt. 1078 (S.D.N.Y. April 2, 2020) (defendant was eligible for home confinement in two weeks' time).

[8] *See, e.g.*, *United States v. Denard Butler*, No. 18 Cr. 834 (PAE), Dkt. 461 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release motion for recently sentenced defendant with asthma and a cardiac condition who had served 15 months of 60-month sentence); *United States v. Credidio*, No. 19 Cr. 111 (PAE), Dkt. 62 (S.D.N.Y. Mar. 30, 2020) (for similar reasons, denying compassionate release motion for a defendant at heightened risk of COVID-19 who had served just two months of a 33 months sentence); *United States v. Nissen*, No. 17 Cr. 477 (PAE), 2020 WL 2614825, at *3 (S.D.N.Y. May 22, 2020) (denying compassionate release motion and finding that a reduction of a 27-month sentence to 7 months would be "highly inconsistent" with the 3553(a) factors).

Accordingly, finding that the § 3553(a) factors are inconsistent with the termination of Carter's prison sentence, the Court denies Carter's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).


SO ORDERED.

_Paul A. Engelmayer_
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: June 11, 2020
          New York, New York

7